IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————

No. 12-16172

———————

CITY OF TOMBSTONE,
Plaintiff – Appellant,

v.

UNITED STATES OF AMERICA, et al.
Defendants – Appellees.

———————

On Appeal from the United States District Court for the District of Arizona
No. CV 11-845-TUC-FRZ

———————

**BRIEF OF APPELLEES**
**(PRELIMINARY INJUNCTION INTERLOCUTORY APPEAL)**

———————

IGNACIA S. MORENO
*Assistant Attorney General*

OF COUNSEL

Cassandra Casaus Currie
United States Department of
Agriculture
Office of the General Counsel,
Mountain Region
Albuquerque, NM 87103-0586

MARK R. HAAG
DAVID C. SHILTON
*Attorneys*
Environment & Natural Resources Div.
United States Department of Justice
P.O. Box 7415
Washington, D.C. 20044
202-514-5580

# TABLE OF CONTENTS

**PAGE**

JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

    A.    Nature of Case and Proceedings Below . . . . . . . . . . . . . . . . . . . . . .  2

    B.    Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

        1.    Tombstone's Huachuca Mountain Water System . . . . . . . . . .  8

        2.    The Forest Service's Authorization of Repairs
             to the Water System . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

        3.    Tombstone's Request for a "Blanket Permit"
             for Additional Work in the Wilderness Area . . . . . . . . . . . .  16

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

I.    Tombstone failed to demonstrate that it is likely to succeed
    or that it raised serious questions on the merits . . . . . . . . . . . . . . . . . .  20

    A.    The Forest Service's actions to protect federal land from
        degradation and enforce the prohibitions of the Wilderness
        Act did not violate the Tenth Amendment . . . . . . . . . . . . . . . . . . .  21

    B.    The district court's ruling on the Quiet Title Act need
        not be reached on this appeal, and is correct in any event . . . . . . .  31

**PAGE**

C. Tombstone's APA claims are not at issue in this appeal, and in any event provided no basis for a preliminary injunction . . . . . . . . 33

II. The district court did not abuse its discretion in finding that Tombstone failed to show that denial of its requested preliminary injunction would cause irreparable harm . . . . . . . . 35

A. There was no irreparable harm to sovereign interests . . . . . . . . 36

B. Tombstone failed to establish the existence of irreparable harm to health or safety . . . . . . . . 37

III. The district court properly found that the balance of equities and the public interest favored denial of injunctive relief . . . . . . . . 43

CONCLUSION . . . . . . . . 45

CERTIFICATE OF COMPLIANCE . . . . . . . . 46

CERTIFICATE OF SERVICE . . . . . . . . 46

# TABLE OF AUTHORITIES

**CASES:**                                                                    **PAGE**

*Alden v. Maine,*
    527 U.S. 706 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Alliance for the Wild Rockies v. Cottrell,*
    632 F.3d 1127 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 17

*Arizona Cattle Growers' Ass'n v. Salazar,*
    606 F.3d 1160 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Bennett v. Spear,*
    520 U.S. 154 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 33, 35

*Block v. N.D. ex rel. Bd. of Univ. and Sch. Lands,*
    461 U.S. 273 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32, 33

*Bond v. United States,*
    131 S. Ct. 2355 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Chaker v. Crogan,*
    428 F.3d 1215 (9th  Cir. 2005); . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Clouser v. Espy,*
    42 F.3d 1522 (9th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24, 31

*Earth Island Inst. v. U.S. Forest Serv.,*
    442 F.3d 1147 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Easley v. Cromartie,*
    532 U.S. 234 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Engine Mfrs. Ass'n v. South Coast Air Quality Management Dist.,*
    498 F.3d 1031 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Federal Trade Com'n v. Enforma Natural Products, Inc.,*
    362 F.3d 1204 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Garcia v. San Antonio Metropolitan Transit Authority,*
    469 U.S. 528 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Goldie's Bookstore, Inc. v. Superior Ct. of Cal.*,
　739 F.2d 466 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Gonzales v. Raich*,
　545 U.S. 1 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*GoTo.com, Inc. v. Walt Disney Co.*,
　202 F.3d 1199 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*High Sierra Hikers Ass'n v. Blackwell*,
　390 F.3d 630 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 23, 43

*Hodel v. Virginia Surface Mining & Recl. Assn.,*
　452 U.S. 264 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Husain v. Olympic Airways,
　316 F.3d 829 (9th Cir. 2002), aff'd, 540 U.S. 644 (2004) . . . . . . . . . . . . 18

*Karuk Tribe v. U.S. Forest Service*,
　　--- F.3d ---, 2012 WL 1959231 (9th Cir. 2012) . . . . . . . . . . . . . . . . . 12, 23

*Kleppe v. New Mexico*,
　426 U.S. 529 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 25, 28, 36, 37

*Munaf v. Geren*,
　553 U.S. 674 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*National League of Cities v. Usery*,
　426 U.S. 833 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*New York v. U.S.*,
　505 U.S. 144 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 27

*Printz v. United States*,
　521 U.S. 898 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Reno v. Condon*,
　528 U.S. 141 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27, 28, 29

*Russian River Watershed Protection Committee v. City of Santa Rosa* ,
　142 F.3d 1136 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Sierra Club v. Marsh*,
    816 F.2d 1376 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*South Carolina v. Baker*,
    485 U.S. 505 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Southern Utah Wilderness Alliance v. Bureau of Land Management*,
    425 F.3d 735 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Stanley v. University of Southern California*,
    13 F.3d 1313 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Sw. Voter Registration Educ. Project v. Shelley*,
    344 F.3d 914 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Swan v. Peterson*,
    6 F.3d 1373 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*The Lands Council v. McNair*,
    537 F.3d 981 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Thomas v. Peterson*,
    753 F.2d 754 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*United States v. City and County of San Francisco*,
    310 U.S. 16 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25, 27

*United States v. Elliott*,
    322 F.3d 710 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 42

*United States v. Gardner*,
    107 F.3d 1314 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Grimaud*,
    220 U.S. 506 (1911) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. U.S. Gypsum Co.*,
    333 U.S. 364 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*

*United States v. Vogler*,
   859 F.2d 638 (9th Cir. 1988),
   *cert. denied*, 488 U.S. 1006 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Working*, 224 F.3d 1093 (9th Cir. 2000) . . . . . . . . . . . . . . . . .  18

*Unt v. Aerospace Corp.*,
   765 F.2d 1440 (9th Cir.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Winter v. Nat'l Resources Def. Council, Inc.*,
   555 U.S. 7, 129 S. Ct. 365 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . 5, 17, 35, 43

**CONSTITUTION:**

U.S. Const. art. IV, § 3, cl. 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**STATUTES:**

Act of February 15, 1901,
   31 Stat. 790 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Act of July 26, 1866,
   14 Stat. 25. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

Administrative Procedure Act,
   5 U.S.C. § 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 33

Arizona Wilderness Act of 1984,
   Pub. L. No 98-406, 98 Stat. 1485 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Endangered Species Act,
   Section 7(a)(2), 16 U.S.C. § 1536(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . 15, 44
   16 U.S.C. § 1536(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 44

Organic Act of 1897,
   16 U.S.C. § 551 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22, 32

Quiet Title Act
   28 U.S.C. § 2409a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 31
   28 U.S.C. § 2409a(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 32, 33

Wilderness Act,
    16 U.S.C. §§ 1131–1136 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
    16 U.S.C. §1133(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 23

28 U.S.C. § 1292(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**RULE**

Fed. R. Civ. Proc. 52(a), 52(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

**REGULATIONS:**

36 C.F.R. § 220.6(e)(3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
36 C.F.R. § 251.51 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**MISCELLANEOUS:**

Presidential Proclamation 1121 (April 17, 1911). . . . . . . . . . . . . . . . . . . . 8
Presidential Proclamation of Nov. 6, 1906,
    34 Stat. 1269 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Presidential Proclamation of Mar. 4, 1907
    34 Stat. 3255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## JURISDICTION

The City of Tombstone ("Tombstone") asserted jurisdiction in the district court under several statutes, including 28 U.S.C. § 1331 (federal question). Appellant's Excerpts of Record ("ER") 705-06 (First Amended Complaint). The district court issued an order on May 14, 2012, denying Tombstone's second motion for a preliminary injunction. ER3-16. This Court has jurisdiction under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF ISSUES

1. Whether the district court abused its discretion by finding that Tombstone had failed to demonstrate a likelihood of success, or even serious questions, on its claim that the Forest Service had commandeered the City's water system and threatened its sovereignty in violation of the Tenth Amendment to the U.S. Constitution, where the Forest Service approved two specific requests for use of motorized equipment to repair water collection and transmission facilities located in a congressionally-designated wilderness area, but refused to give blanket approval for additional work in the wilderness area with motorized equipment without Tombstone first providing detailed information to the Forest Service for specific activities.

2. Whether the district court abused its discretion by finding that Tombstone failed to demonstrate that it would be irreparably injured without the requested injunction, given that water delivery from the City's existing water

collection and transmission system in the Coronado National Forest had been substantially restored, or in finding that the interests of the Forest Service and the public in protecting a designated wilderness area would be harmed by allowing Tombstone to use excavators and other heavy construction equipment in the wilderness area without oversight from the Forest Service.

## STATEMENT OF THE CASE

### A.    Nature of Case and Proceedings Below

This interlocutory appeal arises from a dispute between Tombstone and the Forest Service over the scope of repair work to water collection and transmission facilities that the Forest Service has allowed Tombstone to carry out in a congressionally-designated wilderness area.[1]  Unsatisfied with the Forest Service's two specific authorizations to use mechanized equipment to carry out repairs in the wilderness area, Tombstone brought suit seeking declarations that it has rights within the wilderness area that would allow it to freely use mechanized and motorized equipment without specific Forest Service authorization.

Tombstone filed its original complaint in this action on December 28, 2011. Supplemental Excerpts of Record ("SER") 1.  That complaint sought an "adjudication under the Quiet Title Act, 28 U.S.C. § 2409a (2006), that Plaintiff

---

[1] The facilities and springs at issue are located in upper Miller and Carr Canyons, within the Miller Peak Wilderness Area, which was designated as wilderness by and act of Congress in 1984.  Arizona Wilderness Act of 1984, Pub. L. No. 98-406, 98 Stat. 1485 (1984); ER365 (McKay Decl. ¶16).

hold title contained within the Coronado National Park wilderness area [sic] and a right-of-way across the National Forest System lands and public lands owned by Defendant United States of America in accordance with express easements, or in accordance with the prescriptive easements as alleged herein. SER5. The complaint sought in the alternative a declaration that Tombstone had a right to maintain a pipeline right of way in the wilderness area "without fee and without any additional authorization from Defendants." SER6. Also on December 28, 2011, Tombstone filed a motion for preliminary injunction, seeking to enjoin the Forest Service "from interfering with Tombstone's efforts to repair its pipeline within the Coronado National Forest or any other public lands owned and/or managed by the United States of America." SER7.

The district court held a hearing – including live testimony from Tombstone witnesses – on January 26, 2012. ER1417. An additional hearing was held on February 2, 2012. ER1251-1415. On March 1, 2012, the district court issued an Order denying the motion for preliminary injunction, without prejudice. The court explained that the "record is in a state of disarray such that this Court can not properly issue a reasoned decision comporting with the applicable rules of procedure," because Tombstone had continually raised new issues in its filings not encompassed by the Complaint or Motion for Preliminary Injunction. ER1244. The court stated that while normally it would "likely deny the motion for a preliminary injunction for Plaintiff's failure to meet its burden to properly and

3

timely support its request," it would allow Tombstone in this case to file a new stand-alone motion for preliminary injunction, along with an amended Complaint to encompass its new theories. ER1247-48.

Tombstone filed an Amended Complaint along with its second motion for preliminary injunction on March 30, 2012. ER704. Like the original complaint, Tombstone's Amended Complaint sought a declaration that Tombstone held certain "vested rights in property," and that the Forest Service's alleged interference with Tombstone's rights was arbitrary, capricious, and unlawful. ER767. Tombstone also sought a declaration that the Forest Service's alleged interference with its rights to "restore full beneficial use of its water rights using necessary equipment and vehicles * * * violates the principle of state sovereignty guaranteed by the Tenth Amendment to the U.S. Constitution." ER767-68. Tombstone's second motion for preliminary injunction sought an order enjoining defendants from "interfering with Tombstone's vested rights * * * to repair its Huachuca Mountain Water Infrastructure and restore full rightful beneficial use of its water rights using necessary equipment and vehicles, including heavy equipment and vehicles as well as mechanized equipment and vehicles * * *." ER909-910. The parties submitted briefs on the preliminary injunction request. The court determined that further hearings were unnecessary, since the court had held two hearings on the first preliminary injunction motion. ER1249.

4

On May 14, 2012, the district court issued an order denying preliminary injunctive relief. The court first considered whether Tombstone had demonstrated that it was "likely to succeed on the merits" pursuant to the preliminary injunction standard set out in *Winter v. Nat'l Resources Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ("*Winter*"), or demonstrated "serious questions going to the merits" and "a hardship balance that tips sharply toward the plaintiff" pursuant to the alternative test of *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (internal quotation marks omitted). The court found that Tombstone's merits claims that hinged on allegations of alleged vested property rights could not support a preliminary injunction because claims involving disputed title to property in which the United States claims an interest may only be brought under the Quiet Title Act, and that statute bars preliminary injunctive relief. ER9, citing 28 U.S.C. § 2409a(c) ("No preliminary injunction shall issue in any action brought under this section"). ER6-9.

The court next found that Tombstone "has not demonstrated serious questions going to the merits (or a likelihood of success) on the APA claims in this case." ER12. In particular, Tombstone had not shown that it was aggrieved by "final agency action" pursuant to 5 U.S.C. § 704:

> First, there certainly has been no consummation of the Defendants' decision making process. Rather, the record reflects that Defendants have consistently and continually worked with Plaintiff to attempt to resolve their water issues. There have been numerous communications between the parties where Defendants have

5

> attempted to accommodate Plaintiff's requests to repair water
> structures, have consistently encouraged Plaintiffs to submit site
> specific information with details as to the work that needs to be
> performed and the equipment needed such that Defendants could
> properly assess any impacts in the wilderness, and Defendants have
> been receptive to Plaintiff's requests and have changed certain
> requirements after considering Plaintiff's concerns. Rather,
> Tombstone failed to provide adequate information with details as to
> the work that needed to be performed and the equipment needed such
> that Defendants could properly assess any impacts in the wilderness.

ER10.  For similar reasons, the court also found that Tombstone had not

demonstrated that the Forest Service had taken any action "by which rights or

obligations had been determined, or from which legal consequences will flow"

pursuant to the test for final agency action set out in *Bennett v. Spear*, 520 U.S.

154, 178 (1997).  ER10-11 (*quoting Bennett* and omitting internal quotation marks

and citations).

    The court also found that Tombstone had not demonstrated a likelihood of

success (or serious questions) on the merits its Tenth Amendment claim.  The

court found that "[t]he record before the Court reflects that Defendants have

engaged in appropriate regulation relating to federal land, and have not

commandeered state property or improperly regulated the State."  ER13.

    Turning to the balance of equities and the public interest, the court found

that "Plaintiff has not demonstrated irreparable harm," noting that:

> it appears that Plaintiff's water from the Huachuca mountains has
> been substantially restored, Plaintiff currently has access to sufficient
> and safe water between its wells and the Huachuca water, and that

6

> Plaintiff's claims of a drastic water emergency related to public
> consumption and fire needs are overstated and speculative.

ER15. The court also found that "it appears that Plaintiff is largely attempting to engage in activity resulting in new construction and action that was not covered by the 1962 SUP [Special Use Permit], as opposed to simply restoring existing water facilities." *Id.*

On the other hand, the court found that granting the requested relief would likely cause irreparable harm:

> Plaintiff cutting a path through a federally protected wilderness area
> with excavators and other construction equipment would have a
> significant impact; the public interest and equities weigh in favor of
> Defendants who are attempting to conserve and protect important
> wilderness areas.

ER15.

As Tombstone had met none of the required tests for preliminary injunctive relief, the court denied the motion. ER16.

Tombstone moved for an emergency injunction pending appeal from this Court, which was denied May 30, 2012. SER29. Tombstone then sought an emergency injunction pending appeal from Justice Kennedy, which was denied on June 1, 2012. SER30. Finally, Tombstone sought an emergency injunction pending appeal from Justice Thomas, which was denied on June 5, 2012. SER32.

7

**B.    Facts**

**1.    Tombstone's Huachuca Mountain Water System**

For over 100 years, residents of Tombstone have obtained water from springs in Miller and Carr Canyons in the Huachuca Mountains of southern Arizona.  ER1191.  In 1906, President Theodore Roosevelt issued a Presidential Proclamation designated portions of the Huachuca Mountains – including Miller and Carr Canyons – as the Huachuca Forest Reserve.  34 Stat. 3255 (Nov. 6, 1906).  The Reserve became the Huachuca National Forest on March 4, 1907 (34 Stat. 1269), and was subsequently combined with other National Forests to become the Coronado National Forest.  *See* Presidential Proclamation 1121 (April 17, 1911); ER360-61.

In 1913, the Huachuca Water Company obtained a right of way permit from the Department of the Interior ("DOI") under the Act of February 15, 1901 (31 Stat. 790).[2/]  The permit authorized the Water Company to run pipelines for a water system over certain public lands administered by DOI, but did not include lands within the National Forest.  ER521-23, 527, 1157-58, 1164.  In 1947, the Water Company transferred all of its assets, including rights of way, to Tombstone.  ER1164.  In 1948, Tombstone obtained a special use permit from the

_____

[2/] That Act provided that permits issued under its authority "may be revoked by [the Secretary of the Interior] in his discretion, and shall not be held to confer any right, or easement, or interest in, to, or over any public land, reservation, or park." 31 Stat. 790, 791.

Forest Service to maintain the water system it had acquired from the Huachuca Water Company; that permit was renewed in 1962, and is still in force. ER1165, 1186.[3]

The 1962 SUP was issued for the purposes of "[c]onstructing, maintaining, and using a municipal water supply with the right of fencing the six (6) water sources. (5 parcels)." ER1166. The only spring developments authorized by the permit are Carr, Rock, Clark, Miller, and Gardner springs. (Two springs located in close proximity to each other at Rock Spring were authorized to be fenced jointly.) No other spring developments have been authorized by the Forest Service. ER60 (Bennett Decl. ¶4). The 1962 SUP contains numerous terms and conditions, including limitations on Tombstone's ability to construct facilities after 14 months from the issuance date of the permit, requirements for Forest Service approval prior to undertaking certain activities, and reservations of rights to the Forest Service to revoke or terminate the permit. ER87-88.[4] The SUP was issued before Congress designated the Miller Peaks Wilderness in 1984, and thus

---

[3] A special use permit provides permission, without conveying any interest in land, to occupy and use National Forest System land or facilities for specified purposes, and is both revocable and terminable. *See* ER 364-65 (McKay Decl. ¶14); *see also* 36 C.F.R. § 251.51 - Definitions.

[4] The version of the 1962 SUP that Tombstone submitted to the district court (ER1166 *et seq.*) omits all of the pages setting out the SUP's conditions.

does not address use of mechanized or motorized equipment in the Wilderness. ER1188.

In 1979, Tombstone filed statements of claim to the right to use the five water sources mentioned in the 1962 SUP with the Water Rights Claim Registry of the Arizona State Land Department and in State Court proceedings to determine the relative rights to the use of waters of the San Pedro River and its tributary watersheds.  ER550-54, 572-91, 1187; *see also* ER368 (McKay Decl. ¶23).  The State has not issued a water right for these claims, as it has not completed the adjudication of the Upper San Pedro watershed.[5/]  ER1187.

The permitted pipeline from the five spring development sites described in the 1962 SUP crosses both federal and private lands within the boundaries of the Coronado National Forest.  Portions of the pipeline crossing federal lands in upper Miller and Carr Canyons are located within the Miller Peak Wilderness Area. ER1186; ER365 (McKay Decl. ¶16).

## 2.    The Forest Service's Authorization of Repairs to the Water System

In June and July of 2011, heavy rains falling on areas burned in the Monument Fire led to flooding that damaged some pipelines and collection structures that are part of Tombstone's water system.  ER1185.  Pursuant to A.R.S.

---

[5/] In March and May, 2012, Tombstone filed additional statements of claim in the State Court proceedings, asserting claims to the other 19 springs it claims in this litigation that are not mentioned in the 1962 SUP or its 1979 statements of claim.

10

§ 35-192, which authorizes the expenditure of State funds in the event of an emergency, Governor Brewer signed a Declaration of Emergency on August 17, 2011, directing that $50,000 from the State's general fund be made available for responding to the emergency posed by the Tombstone waterline flooding. ER842. The Declaration did not address the subject of Tombstone's need to obtain permission from the federal government for activities on federal land. *Id*.

In September 2011, Tombstone City officials contacted the Forest Service regarding the City's need to repair the existing water system in Miller and Carr Canyons. ER1186. The Forest Service advised the City that it would need to provide additional information regarding the work it intended to perform. On October 24, 2011, the City provided information regarding the specific equipment and type of work proposed to repair its main pipeline from the wilderness boundary up to the existing development at Miller Spring. ER1186. This enabled the Forest Service to begin the required analysis of effects of the proposal.

The Forest Service carries out this analysis pursuant to Section 4(c) of the Wilderness Act, 16 U.S.C. §1133(c). That provision contains several prohibitions on activities within designated wilderness areas, subject to specific exceptions:

> Except as specifically provided for in this chapter, and subject to existing private rights, there shall be no commercial enterprise and no permanent road within any wilderness area designated by this chapter and, except as necessary to meet minimum requirements for the administration of the area for the purpose of this chapter (including measures required in emergencies involving the health and safety of persons within the area), there shall be no temporary road,

11

> no use of motor vehicles, motorized equipment or motorboats, no
> landing of aircraft, no other form of mechanical transport, and no
> structure or installation within any such area.

16 U.S.C. §1133(c).  Thus, to authorize the use of motor vehicles and motorized

equipment, as Tombstone proposed, the Forest Service must determine whether

such use is "necessary to meet minimum requirements for the administration of the

area."  *See High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 646-47 (9th Cir.

2004) (discussing need for Forest Service to make supported finding as to whether

certain commercial services within wilderness were "necessary").  The Forest

Service completes a Minimum Requirements Decision Guide (MRDG) to satisfy

this requirement when an applicant like Tombstone requests authorization to use

motor vehicles or mechanical equipment.

On November 4, 2011, the Southwestern Regional Forester approved an

MRDG to allow repairs to the existing spring development at Miller Spring within

the Miller Peak Wilderness Area.  ER1185-98.  In this MRDG, the Forest Service

first found that repair actions were necessary to avoid the loss of an important

water source for Tombstone.  ER1192.  The Forest Service next considered the

"minimum requirements" for meeting this need by assessing several alternative

ways of accomplishing the repairs, including the alternative of limiting Tombstone

to non-mechanized means of repair and hauling.  ER1192-97.  The Forest Service

ultimately determined that budgetary and time limitations faced by Tombstone

warranted allowing the use of mechanized and motorized equipment.  ER1197.

12

Permitting use of mechanized equipment in a wilderness area also requires that the federal land management agency carry out a review under the National Environmental Policy Act (NEPA) of possible impacts of such action on the environment.  *See*, *e.g. High Sierra Hikers*, *supra*, 390 F.3d at 639-41 (discussing NEPA requirements for Forest Service permits authorizing commercial pack stock activities in wilderness area).  In addition, before authorizing activity that may affect species listed under the Endangered Species Act or the designated critical habitat of such species, the authorizing agency must comply with the consultation requirements of Section 7(a)(2) of that Act, 16 U.S.C. § 1536(a)(2).  *See Karuk Tribe v. U.S. Forest Service*, _ F.3d _, 2012 WL 1959231 (9th Cir. 2012)(*en banc*).  These and other required environmental reviews were completed on an expedited basis for Tombstone's request, and on November 7, 2011, Forest Supervisor Jim Upchurch issued a Decision Memorandum explaining the results of these reviews and the decision to authorize the requested repair of Tombstone's water system infrastructure  in Miller Canyon.  ER1233-43.  The Memorandum found that the proposed action met the criteria for a categorical exclusion from further NEPA review.  ER1234, citing 36 C.F.R. § 220.6(e)(3).  It also noted that the District Biologist had determined that the proposed action would have no effect on Federally listed threatened or endangered species or designated critical

habitat.  ER1237.  The authorization in the Decision Memorandum was made effective immediately.  ER1237.[6]

On November 29, 2011, Tombstone submitted a second proposal to the Forest Service, requesting permission to repair the Gardner Spring infiltration basin and the 4 inch pipeline from this basin that ties into the 7 inch pipeline that serves Miller Spring. ER1200.  The proposed work in the wilderness area would involve use of a mini-excavator/trail machine for excavating a trench and some other mechanized equipment.  ER1201.  On December 9, 2011, the Forest Service approved a second MRDG to allow the use of mechanized and motorized equipment to carry out these repairs, providing rationales similar to those in the earlier MRDG for Miller Spring.  ER1215.  On December 22, 2011, the Forest Supervisor signed a Decision Memorandum approving Tombstone's proposal to make repairs to the Gardner Spring collection structure and pipe line.  ER1239-43.  Once again, the Forest Service determined that the work was categorically excluded from further NEPA review.  ER1240.  The Decision Notice notes that the District Biologist had determined that this proposal "may affect but is not likely to adversely affect" several species listing under the ESA, including the Mexican

---

[6] Concurrent with the work at Miller Spring, City workers cleaned out the reservoir at Carr Spring and installed a new pipe from the collection point to the reservoir, restoring the flow of water from Carr Spring to Tombstone.  ER66 (Bennett Decl. ¶24); ER 264 (Keyes Decl. ¶9).

spotted owl. ER1240.[7] Accordingly, the Forest Service entered into emergency consultation with the U.S. Fish and Wildlife Service pursuant to ESA Section 7(a)(2), 16 U.S.C. §1536(a)(2). Ultimately, the agencies determined that adverse effects to listed species would be avoided if Tombstone completed the project by March 1, the first day of the Mexican spotted owl breeding season, and observed other conditions, including construction of a pond to provide an alternative water source for wildlife. ER1240.[8]

_____

[7] The Mexican spotted owl was listed as a threatened species under the ESA in 1993. *See Arizona Cattle Growers' Ass'n v. Salazar,* 606 F.3d 1160, 1162 (9th Cir. 2010).

[8] On March 27, 2012, the Forest Service, in response to a request that same day from Tombstone, amended the MRDG to allow for the use of mechanized equipment, specifically wheelbarrows. ER68, 179, 183-84. In a misguided effort to demonstrate that "Tombstone has been subject to harassment by Defendants consisting of deliberate approval delays and interference with repair efforts the Forest Service" Tombstone cites only the initial determination by a Forest Service ranger that wheelbarrows were "mechanized equipment" that may not be used in a wilderness absent special permission, without mentioning that such permission was provided only hours later. Tombstone Br. 8. Amicus Coalition of Counties takes similar liberties with the facts. *See* COC Br. 13 ("The refusal by the USFS to allow any use of mechanized equipment, including a wheel barrel [sic], on the rights-of-way substantially impairs the Plaintiff's ability to maintain that right of way"). Far from deliberate delays and interference, the Forest Service made every effort to expeditiously approve repair work when Tombstone provided details about the type of work proposed. *See, e.g.,* ER1218 (Forest Service cites willingness to expedite process); ER1220-21 (Forest Service explains how it had given special treatment to Tombstone's requests that normally would have "requir[ed] a much greater lead time for analysis"); ER1439 (Tombstone's public works manager Kevin Rudd testifies that at October 2011 meeting, Forest Service employees expressed determination to "do everything they could to expedite our permission").

15

### 3.    Tombstone's Request for a "Blanket Permit" for Additional Work in the Wilderness Area

On December 5, 2011, Tombstone City Manager George Barnes wrote to Forest Supervisor Upchurch, stating that "[w]hile the Forest Service appears to be dealing with the permitting process one spring at a time we want it to be clear that we have been requesting a permit covering all of the spring water supplies to which we have Notices of Appropriation." ER1219. Mr. Barnes enclosed a 1901 sketch map which allegedly depicted additional springs where Tombstone wished to engage in further work under a "blanket permit." *See* ER194 (1901 map).

The Forest Service responded in a December 7, 2011, letter that it was willing to address all of Tombstone's proposed actions, but that it would need site-specific information to determine effects before it could consider authorizing particular activities, and that simply indicating the location of springs on a map was not sufficient information to determine the effects of repair work. ER1220. The letter noted that "[o]ther than the information that you have previously provided us for work at Miller and Gardner Springs, we have no other information from you as to the type and amount of work that you are proposing to do at any of the other spring locations." *Id.* In a letter dated February 27, 2012, the Forest Supervisor reiterated the need for additional information, but Tombstone did not provide more information. ER161-65; ER67 (Bennett Decl. ¶24). Instead, it has pursued this litigation.

## STANDARD OF REVIEW

A preliminary injunction is "an extraordinary and drastic remedy," "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal citations omitted). It "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. To obtain a preliminary injunction, Tombstone was required to clearly establish four elements: that it is likely to succeed (or has raised serious questions) on the merits;[9] that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor; and that an injunction is in the public interest. *See id.*

"A district court's decision regarding preliminary injunctive relief is subject to 'limited and deferential' review." *The Lands Council v. McNair*, 537 F.3d 981, 986 (9th Cir. 2008) (*en banc*) (*McNair*) (*quoting Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (*en banc*) (*per curiam*)). This Court reviews the denial of a preliminary injunction for abuse of discretion, which occurs if the district court "base[s] its decision on an erroneous legal standard or clearly erroneous findings of fact." *McNair,* 537 F.3d at 986 (citation omitted). The Court instructed that "[u]nder this standard, '[a]s long as the district

---

[9] In some circumstances under this Circuit's precedents, an injunction may be appropriate if the proponent can show "serious questions" on the merits, if it carries its burden on the other three factors and the balance of hardships "tips sharply" in its favor. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

court got the law right, it will not be reversed simply because the appellate court would have arrived at a different result if it had applied the law to the facts of the case.'" *Id.* at 986-87 (*quoting Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1156 (9th Cir. 2006)).

A district court's factual findings will be found "clearly erroneous" only when the reviewing court has a "'definite and firm conviction that a mistake has been committed.'" *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (*quoting United States v. U.S. Gypsum Co.*, 333 U.S. 364 (1948)). If the district court's findings are plausible in light of the entire record, the reviewing court may not reverse, even if we would have weighed the evidence differently. *Husain v. Olympic Airways*, 316 F.3d 829, 835 (9th Cir. 2002), *aff'd*, 540 U.S. 644 (2004). "'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" *United States v. Elliott*, 322 F.3d 710, 715 (9th Cir. 2003) (*quoting United States v. Working*, 224 F.3d 1093, 1102 (9th Cir. 2000)).

## SUMMARY OF ARGUMENT

As the district court correctly found, Tombstone failed to make any of the showings that are required to obtain the extraordinary remedy of a preliminary injunction. First, Tombstone failed to show a likelihood of success or serious questions on the merits of its claim. Tombstone's assertion that the Forest Service has violated the Tenth Amendment by requiring the City to comply with federal

18

law is untenable.  The Constitution's Property Clause and multiple decisions of the Supreme Court and this Court recognize the plenary authority of the federal government to regulate the use of federal lands.  The fact that Tombstone is a political subdivision of a State does not excuse Tombstone from the obligation to comply with federal law when it seeks to undertake construction activity on federal lands.  Further, to the extent that Tombstone's claim for injunctive relief is premised on purported property interests that are adverse to the United States, its claim is barred by the Quiet Title Act, which expressly prohibits preliminary injunctions against the United States in such cases.

Second, Tombstone failed to demonstrate that it is likely to suffer irreparable harm.  The district court found that Tombstone's water from the Huachuca Mountains has been substantially restored, that the City has access to sufficient and safe water, that the City's claims of a drastic water emergency are "overstated and speculative," and that the relief sought by the City involves new construction rather than restoration of the City's existing water facilities.  ER15. The record provides ample support for those findings.

Finally, Tombstone failed to establish that the balance of equities and the public interest favor a preliminary injunction.  Rather, the blanket authority the City seeks to use heavy construction equipment in a congressionally-designated Wilderness Area would harm the public interest and thwart the intent of Congress

19

as expressed in the Wilderness Act, the Endangered Species Act, and other environmental laws.

## ARGUMENT

**I.    Tombstone failed to demonstrate that it is likely to succeed or that it raised serious questions on the merits.**

Tombstone here rests its claim of purported likelihood of success on the merits solely on its contention that "Defendants' conduct violates the Tenth Amendment because it threatens Tombstone's continued existence as a political subdivision of the state, commandeers Tombstone's essential municipal property, and regulates Tombstone as a political subdivision of the State of Arizona in such a way as to violate the principle of state sovereignty."  Br. 16-17 (summary of argument).[10/]  The district court correctly found that there is no support in the law for Tombstone's claim that the Forest Service's actions in this case somehow violated the Tenth Amendment.  The district court found that the Forest Service

---

[10/] Tombstone's argument (Br. 20-22) that the district court abused its discretion by finding that the Quiet Title Act bars preliminary injunctive relief on claims that depend on allegations of title disputed by the government hinges entirely on its Tenth Amendment claim.  Tombstone's only challenge to the district court's ruling regarding the Quiet Title Act is that "the lower court disregarded the fact that Tombstone's motion encompassed prospective equitable relief against the individual Defendants for *violating the Tenth Amendment*," (Br. 20-21, emphasis in original), which in Tombstone's view removes its claim from any limitation on the waiver of sovereign immunity provided by the Act.  Hence, if Tombstone's claim of a Tenth Amendment violation is without substance, as the district court found, there is no need to reach the Quiet Title Act issue.  In any event, as we show *infra* at pp. 31-32, Tombstone's officer suit theory for avoiding limitations imposed by the Quiet Title Act is also without merit.

20

here had "engaged in appropriate regulation relating to federal land," and had not "commandeered state property or improperly regulated the State." ER13. As we show below, this finding was based on a correct understanding of the law. Accordingly, the district court's finding that Tombstone "has not demonstrated serious questions going to the merits (or a likelihood of success) on the Tenth Amendment claims" (*id*.) was not an abuse of discretion.

> **A.** **The Forest Service's actions to protect federal land from degradation and enforce the prohibitions of the Wilderness Act did not violate the Tenth Amendment.**

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. Tombstone claims the Forest Service violated the Tenth Amendment by declining to grant the City "blanket" permission, without the necessity for compliance with federal law and the express limitations of Tombstone's 1962 SUP, to use heavy construction equipment in the Miller Peak Wilderness. This claim failed to raise even serious questions going to the merits.

First, Tombstone fails to accord proper weight to the Constitution's Property Clause, which delegates to Congress the "Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States[.]" U.S. Const. art. IV, § 3, cl. 2. Unlike some other delegations of power found in the Constitution, the Supreme Court has

"repeatedly observed" that "[t]he power over the public land thus entrusted to Congress is without limitations." *Kleppe v. New Mexico*, 426 U.S. 529, 539 (1976) (internal quotation marks and citation omitted); *see also United States v. Gardner*, 107 F.3d 1314, 1318 (9th Cir. 1997). Thus, because the federal laws governing Tombstone's access to National Forest lands are an exercise of the Constitution's delegation of plenary power to the United States, those laws do not implicate the Tenth Amendment's reservation to the states and the people of powers *not* delegated to the United States. *See New York v. U.S.,* 505 U.S. 144, 156 (1992) ("If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States[.]").[1]

Pursuant to the broad constitutional delegation under the Property Clause, Congress has enacted a variety of statutes that protect federal lands against destruction or degradation. The Organic Act of 1897 empowers the Secretary of Agriculture, through the Forest Service, to "make provisions for the protection against destruction by fire and depredations upon the public forests and national forests" and "make such rules and regulations * * * to regulate [the national forests'] occupancy and use and to preserve the forests thereon from destruction." 16 U.S.C. § 551. The Organic Act gives the Forest Service broad discretion to

---

[1] In *New York,* the Supreme Court held unconstitutional a statute requiring state legislators to pass regulations pursuant to Congress' instructions. 505 U.S. at 176-77.

22

regulate the national forests, including for conservation purposes. *See United States v. Grimaud*, 220 U.S. 506 (1911). The Forest Service's authority to regulate for conservation purposes clearly extends to the regulation of activities of permittees or holders of rights of way and similar interests, in order to protect the United State's fee interest and National Forest resources in general. *See, e.g.*, *Clouser v. Espy*, 42 F.3d 1522, 1538 (9th Cir.1994) ("regardless whether the trails in question are public highways under R.S. § 2477, they are nonetheless subject to the Forest Service regulation"); *United States v. Vogler*, 859 F.2d 638 (9th Cir. 1988), *cert. denied*, 488 U.S. 1006 (1989) (same). Thus, whatever the extent of Tombstone's rights under its 1962 permit or under its claimed right of way pursuant to the Mining Act of 1866, those rights are clearly subject to regulation under the Organic Act and other applicable statutes that protect forest resources.[12]

Tombstone's rights, whatever their extent, are also subject to the restrictions of the Wilderness Act, including the prohibition in that Act of motor vehicles, motorized equipment, mechanical transport and structures or installations within designated wilderness areas, "except as necessary to meet minimum requirements for the administration of the area for the purpose of this chapter * * *." 16 U.S.C. § 1133(c). *See High Sierra Hikers Ass'n*, 390 F.3d at 646-47 (9th Cir. 2004)

---

[12] As the Forest Service noted in approving Tombstone's proposed work at Gardner Spring, "[t]here has been no indication that Tombstone owns fee simple property within the boundary of the Coronado NF." ER1204.

(restrictions of Wilderness Act applied to commercial horse packing services operating pursuant to special use permits, even though use predated Wilderness Act); *Clouser*, 42 F.3d at 1538 (upholding Forest Service restrictions on pre-existing road in wilderness area). And to the extent that any activities proposed by Tombstone on federal lands may affect species listed under the Endangered Species Act (ESA), those activities are subject to the Endangered Species Act. *See Karuk Tribe v. U.S. Forest Service*, _ F.3d _, 2012 WL 1959231 (9th Cir. 2012)(*en banc*) (before miners could exercise rights under the Mining Laws, they had to first obtain authorization from Forest Service and Forest Service was required to comply with consultation procedures of the ESA, 16 U.S.C. § 1536(a)).

*No* case has ever held that the requirements of federal statutes like these do not apply when the holder of a permit, right of way or other interest within a National Forest happens to be a State or a subdivision of a State. Indeed, in *United States v. City and County of San Francisco,* 310 U.S. 16, 30 (1940), the Supreme Court specifically rejected a claim that the City of San Francisco, as the owner of power production facilities in Yosemite National Park and the adjacent Stanislaus National Forest, could not as such be subjected to a certain statutory requirements regarding how power from the City facility was distributed. The Court held that:

> Article 4, Section 3, Cl. 2 of the Constitution provides that 'The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging

24

to the United States.'  The power over the public land thus entrusted to Congress is without limitations.   * * * Congress may constitutionally limit the disposition of the public domain to a manner consistent with its views of public policy.  And the policy to govern disposal of rights to develop hydroelectric power in such public lands may, if Congress chooses, be one designed to avoid monopoly and to bring about a widespread distribution of benefits.  The statutory requirement that Hetch-Hetchy power be publicly distributed does not represent an exercise of a general control over public policy in a State but instead only an exercise of the complete power which Congress has over particular public property entrusted to it.

310 U.S. at 30.

In the same way here, assuming that Tombstone has the rights it claims, those rights are fully subject to all limitations and conditions that Congress under its broad Property Clause powers has decided to impose.  Moreover, Congress' exercise of this power in such enactments as the Wilderness Act "does not represent an exercise of a general control over public policy in a State but instead only an exercise of the complete power which Congress has over particular public property entrusted to it."  *City and County of San Francisco,* 310 U.S. at 30.  *See also Kleppe v. New Mexico*, 426 U.S. at 541-42 (statute that protected wild horses and burros on federal lands, thereby displacing New Mexico's estray laws on such lands, was a proper exercise of Congress's power under Property Clause, not an interference with state sovereignty).

Notwithstanding the express language of the Tenth Amendment and the Supreme Court's longstanding recognition of Congress's plenary power under the Property Clause, Tombstone argues that it is likely to prevail on its Tenth

25

Amendment claim because "the Property Clause is limited by the principle of state sovereignty."  Br. 42-43, *citing Bond v. United States,* 131 S. Ct. 2355, 2366 (2011), and *Alden v. Maine,* 527 U.S. 706, 713-14 (1999).  Tombstone's reliance on these cases is misplaced.  In *Bond*, the Court held that a defendant convicted of violating the Chemical Weapons Convention Implementation Act had prudential standing to raise a claim under the Tenth Amendment that the statute impinged on state sovereignty in the area of criminal prosecution.  The Court declined to address the merits of the Tenth Amendment claim.  131 S. Ct. at 2367.  In *Alden,* the Court struck down a federal statute that purported to abrogate the States' sovereign immunity from private damage suits for violations of a federal labor law.  527 U.S. at 712.  Neither *Bond* nor *Alden* involved the Property Clause.

Nor is there merit to Tombstone's argument that by requiring it to comply with federal law, the Forest Service is "commandeering the organs or officials of state government" (Br. 43) and violating the "principle of state sovereignty enforced in *Printz*."  Br. 44, *citing Printz v. United States*, 521 U.S. 898, 920 (1997).[13]  The Supreme Court has drawn a clear distinction between federal laws that "regulate[] state activities" and those that "seek[] to control or influence the manner in which States regulate private parties."  *Reno v. Condon*, 528 U.S. 141, 150 (2000) (*quoting South Carolina v. Baker*, 485 U.S. 505, 514-15 (1988)).

---

[13] In *Printz,* the Supreme Court struck down a federal statute requiring state legislators to implement a federal gun-control law.  521 U.S. at 925-33.

Federal laws that regulate state activity do not run afoul of the Tenth Amendment where, as here, they do not require the state to enact specific laws or regulations or require the state to aid in the enforcement of a federal law. *See Reno*, 528 U.S. at 151; *New York,* 505 U.S. at 156; *City and County of San Francisco*, 310 U.S. at 29-30.

*Reno* involved a challenge by the State of South Carolina to a federal statute that required states to restrict the disclosure of driver license records and imposed fines and penalties for failure to comply with the provisions. *Reno*, 528 U.S. at 146. In rejecting the argument that the law violated the Tenth Amendment by commandeering the state regulatory process, the Court explained that:

> Any federal regulation demands compliance. That a State wishing to engage in certain activity must take administrative and sometimes legislative action to comply with federal standards regulating that activity is a commonplace that presents no constitutional defect.

*Id.* at 151 (*quoting South Carolina*, 485 U.S. at 514-15). Because the statute did not require the state to regulate its own citizens and did not require the state to enact any laws or regulations or require state officials to enforce federal statutes regulating private individuals, the Court held that it was "consistent with the constitutional principles enunciated in *New York* and *Printz*." 528 U.S. at 151.

Here, the Forest Service has done nothing more than require the City to comply with the laws and regulations that govern all permitted users of the

National Forest. *Reno* makes clear there is nothing unconstitutional about requiring such compliance.[14]

Moreover, Tombstone's characterization of the Forest Service's action as "overriding a gubernatorial emergency proclamation and commandeering Tombstone's municipal water system" (Br. 44) is unfounded. As described above, Governor Brewer's Declaration of Emergency simply made $50,000 available to the City. ER842. The Declaration says nothing about how repairs to the City's water system were to be made, let alone about exempting Tombstone from otherwise applicable legal requirements. The Forest Service's insistence that Tombstone comply with federal law in no way "overrides" the Governor's action. And if the Governor's declaration had purported to exempt Tombstone from federal law – which it plainly did not do – any such exemption would have been of no effect. *See Gonzales v. Raich,* 545 U.S. 1, 29 (2005) ("The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail"); *Kleppe v. New Mexico*, 426 U.S. at 543 (when Congress acts pursuant to the Property Clause "the federal legislation necessarily overrides conflicting state laws under the Supremacy Clause").

---

[14] Contrary to Tombstone's argument (Br. 41), the district court did not reason that the federal government's power under the Property Clause is "limitless." The court merely found that Tombstone failed to demonstrate serious questions or a likelihood of success on its claim that the Forest Service violated the Tenth Amendment by requiring the City to comply with federal laws governing the City's use of federal land. ER13.

28

Finally, there is no merit to Tombstone's assertion (Br. 45-49) that its Tenth Amendment claim must be analyzed under the test outlined in *National League of Cities v. Usery*, 426 U.S. 833 (1976). The Supreme Court expressly overruled *National League* in *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 557 (1985).[15]

Tombstone contends, based on assorted Commerce Clause and Eleventh Amendment cases that are not directly relevant to the scope of Congress's power under the Property Clause, that the Supreme Court has "by inescapable logical implication overruled *Garcia*, and thereby reinstated *National League of Cities*." Br. 45-46. But even if Tombstone were correct that *National League* has been "reinstated" by implication – which is not the case – Tombstone cannot demonstrate that its Tenth Amendment claim satisfies the *National League* test. First, the federal requirements challenged by Tombstone do not regulate states as states; they are generally applicable laws and regulations that apply equally to any

---

[15] *National League* was a challenge to a federal statute applying federal minimum wage and maximum hour provisions to state and local governments. The Court held that four conditions must be satisfied before a state activity may be deemed immune from a particular federal regulation under the Commerce Clause: 1) the federal statute must regulate the states as states; 2) the statute must address matters that are indisputably attributes of state sovereignty; 3) state compliance with the federal obligation must directly impair the states' ability to structure integral operations in areas of traditional governmental functions; and 4) the relation of state and federal interests must not be such that the nature of the federal interest justifies state submission. *See Garcia*, 469 U.S. at 537 (*citing National League* and *Hodel v. Virginia Surface Mining & Recl. Assn.,* 452 U.S. 264, 287-288, and n. 29 (1981)) (internal quotation marks and alterations omitted).

individual, corporation, or government entity that seeks to use national forest lands. *See Reno,* 528 U.S. at 151. Second, the regulations do not concern essential attributes of state sovereignty. Rather, they govern permitted uses of federal lands, and only implicate Tombstone's water system insofar as Tombstone chooses to obtain its municipal water from those federal lands. Third, Tombstone cannot show that complying with applicable federal law will directly impair its ability to "structure integral operations in areas of traditional governmental functions." Rather, as discussed below, the district court found that notwithstanding the need to obtain and comply with Forest Service permits, the City has been able to substantially restore its water supply. ER15. And finally, the nature of the federal interest here – the protection of congressionally-designated Wilderness and endangered species on federal lands – justifies compliance by the City.

In sum, the district court did not abuse its discretion in finding that Tombstone failed to demonstrate a likelihood of success or the existence of serious questions on the merits of its Tenth Amendment claim.[16]

---

[16] *Amicus* Coalition of Counties ("COC") makes an entirely different argument on the merits, claiming that Tombstone was entitled to engage in "routine maintenance," including use of motorized and mechanized equipment, under the terms of its claimed right of way. COC relies entirely on a Tenth Circuit case – *Southern Utah Wilderness Alliance v. Bureau of Land Management,* 425 F.3d 735 (10th Cir. 2005), which dealt with highway rights of way over Bureau of Land Management land under the Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253,

**B.     The district court's ruling on the Quiet Title Act need not be reached on this appeal, and is correct in any event.**

As the district court found (ER6-13), there were many serious flaws in Tombstone's legal theories underlying its preliminary injunction request.  For one, Tombstone's claim for injunctive relief was premised on its assertion that, as Tombstone puts it in its Brief at 31, "Tombstone owns water rights and rights of way relating to 25 springs, related infrastructure improvements, and pipelines that were established long ago pursuant to the Act of July 26, 1866, 14 Stat. 253, 43 U.S.C. § 661."  Tombstone thus asserts ownership claims over federal land that extend far beyond anything contemplated in the applicable special use permit.

The Quiet Title Act (QTA), 28 U.S.C. § 2409a, is the "exclusive means by which adverse claimants [may] challenge the United States' title to real property." *Block v. N.D. ex rel. Bd. of Univ. and Sch. Lands*, 461 U.S. 273, 286 (1983).  The

---

codified at 43 U.S.C. § 932, *repealed*, Pub. L. No. 94-579 § 706(a), 90 Stat. 2743, commonly called "R.S. 2477."  COC Br. 9, 10-12.

This Court should not consider an argument raised only by an amicus and not by any party. *See infra* pp. 33-34.  In any event, COC overlooks critical differences between *Southern Utah* and this case.  Most obvious, the roads at issue in *Southern Utah* were not in a congressionally designated wilderness, so the issue of whether motorized or mechanical vehicles could be used consistent with Wilderness Act prohibitions was not presented.  This Court has held that the Forest Service *can* restrict activities on R.S. 2477 roads in a wilderness area, including banning entirely the use of motor vehicles to access mining claims *Clouser*, 42 F.3d at 1538.  In any event, as discussed below (pp. 37-39) Tombstone here is not simply asking to maintain an existing right of way, but to expand its system far beyond the 6 springs that it utilized pursuant to its 1948 and ER 11, 15.

QTA expressly forbids a court from granting preliminary injunctive relief in a case premised upon claims seeking to quiet title with the federal government. 28 U.S.C. § 2409a(c). Accordingly, to the extent that Tombstone's claim for injunctive relief is premised on purported property interests that are adverse to the United States, preliminary injunctive relief is simply not available, as the district court correctly noted. ER7-9.

This Court need not resolve in this appeal the extent to which the Quiet Title Act is implicated by Tombstone's claims. Whatever the scope of Tombstone's purported property rights, they are clearly subject to the regulatory authority of the Forest Service under statutes such as the Forest Service Organic Act, the Wilderness Act, and the Endangered Species Act. *See supra* at pp. 22-25. Tombstone's only claim to proceed without regard to these statutes is its unsupported contention that application of these statutes here would violate State sovereignty protected by the Tenth Amendment. The plain invalidity of that contention is sufficient grounds for upholding the denial of a preliminary injunction.

In any event, Tombstone's argument (Br. 21-22) that it can avoid the bar on preliminary injunctive relief imposed by 28 U.S.C. § 2409a(c) by the simple expedient of bringing a suit against individual government officers is directly inconsistent with *Block v. North Dakota ex rel. Bd. of University and School Lands,* 461 U.S. 273 (1983). There the Court explained that:

> [W]e need not be detained long by North Dakota's contention that it
> can avoid the QTA's statute of limitations *and other restrictions* by
> the device of an officer's suit. If North Dakota's position were
> correct, *all of the carefully-crafted provisions of the QTA deemed*
> *necessary for the protection of the national public interest could be*
> *averted.* "It would require the suspension of disbelief to ascribe to
> Congress the design to allow its careful and thorough remedial
> scheme to be circumvented by artful pleading." *Brown v. GSA*, 425
> U.S. 820, 833, 96 S.Ct. 1961, 1968, 48 L.Ed.2d 402 (1976).

*Block*, 461 U.S. at 284-85 (emphasis added). This ruling on the impropriety of

using the "officer's suit" device was not directed solely at the QTA statute of

limitations provision, as Tombstone urges (Br. 21). It instead applies to "all of the

carefully-crafted provisions of the QTA," which plainly includes the provision

found in 28 U.S.C. § 2409a(c) barring preliminary injunctive relief.

## C.    Tombstone's APA claims are not at issue in this appeal, and in any event provided no basis for a preliminary injunction.

The district court held that Tombstone had failed to identify any "final

agency action" reviewable under 5 U.S.C. § 704, because none of the Forest

Service actions complained about here "mark the consummation of the agency's

decisionmaking process" or are actions by which "rights or obligations have been

determined, or from which legal consequences will flow." ER10, *citing Bennett v.*

*Spear*, 520 U.S. at 178 (internal cites and quotation marks omitted). Tombstone

does not challenge this ruling as an abuse of discretion here, but relies solely on its

claim of a violation of the Tenth Amendment.

33

*Amicus* Eagle Forum contends that there was reviewable final agency action. Eagle Forum Br. at 9-10. This Court generally does not review issues raised only by an *amicus curiae*. *See Chaker v. Crogan,* 428 F.3d 1215, 1220 (9th Cir. 2005); *Russian River Watershed Protection Committee v. City of Santa Rosa*, 142 F.3d 1136, 1141 (9th Cir. 1998); *Swan v. Peterson*, 6 F.3d 1373, 1383 (9th Cir. 1993). It has only done so in the unusual instance where the issue raised by the amicus party is "central" to the case and is readily answered. *Engine Mfrs. Ass'n v. South Coast Air Quality Management Dist.,* 498 F.3d 1031, 1043-1044 (9th Cir. 2007), which is not the situation here.

In any event, there is no substance to Eagle Forum's contention. As the district court found with respect to Tombstone's requests to do additional work beyond that authorized in November and December 2011, "Tombstone failed to provide adequate information with details as to the work that needed to be performed and the equipment needed such that Defendants could properly assess any impacts in the wilderness," and "failed to provide Defendants with sufficient information to actually locate the majority of the 25 claimed springs on the ground." ER10. The Forest Service's letter of December 7, 2011, was not a denial of any specific request, but an explanation of what the Forest Service would need before it could properly process a request. ER1220 ("we are willing to address all of your proposed actions; however, we need site specific information to determine the effects before we can consider authorizing such use"). There was

34

neither consummation of any agency decisionmaking process, nor any action by which rights or obligations were determined, or from which legal consequences flowed. *Bennett v. Spear*, 520 U.S. at 178. The district court did not abuse its discretion in finding no likelihood of success, and that no serious issues were raised, on the City's APA claims.

## II. The district court did not abuse its discretion in finding that Tombstone failed to show that denial of its requested preliminary injunction would cause irreparable harm.

To obtain the "extraordinary remedy" of a preliminary injunction, Tombstone was required to show that it was "likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. Harm that is speculative or conjectural cannot justify the grant of a preliminary injunction. *See Goldie's Bookstore, Inc. v. Superior Ct. of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984) (speculative injury does not constitute irreparable injury).

The district court held that "[u]pon review of the record, the Court finds that Plaintiff has not demonstrated irreparable harm." ER15. The court found in particular that:

> [I]t appears that Plaintiff's water from the Huachuca mountains has been substantially restored, Plaintiff currently has access to sufficient and safe water between its wells and the Huachuca water, and that Plaintiff's claims of a drastic water emergency related to public consumption and fire needs are overstated and speculative.

ER15. These findings are not clearly erroneous, and the denial of preliminary injunctive relief was not an abuse of discretion.

35

### A.    There was no irreparable harm to sovereign interests.

Tombstone first contends that the district court abused its discretion by not accepting Tombstone's argument that it had established irreparable harm by showing "impairment of sovereign interests without notice or opportunity to be heard." Br. 24.  There was no need for the district court to evaluate this purported harm, since the mere existence of Tombstone's permitted pipeline and related facilities in the Coronado National Forest plainly does not provide the City with any "sovereign interests" in that federal land.  Tombstone cites *Kleppe v. New Mexico*, 426 U.S. at 542-43, as supporting its claim of sovereign interests, but that case said nothing about the sovereign interests of cities or towns, instead merely noting that "[a]bsent consent or cession a *State* undoubtedly retains jurisdiction over federal lands *within its territory* * * * ."  426 U.S. at 543 (emphasis added). Tombstone is not a State, and in any event the Coronado National Forest is not "within its territory."  Moreover, *Kleppe* made clear that even where a State retains such jurisdiction over federal lands within its territory, "Congress equally surely retains the power to enact legislation respecting those lands pursuant the Property Clause," and that such federal legislation "necessarily overrides conflicting state laws under the Supremacy Clause."  *Id.*

Tombstone's attempt (Br. 24) to rely on purported harm to the State of Arizona's  sovereign interests adds nothing to its claim of irreparable harm. Arizona is not a party here, and Tombstone does not have standing to make claims

36

on behalf of the State.  In any event, Tombstone cites no Arizona law that would authorize Tombstone to engage in additional excavation and construction on federal lands without compliance with federal laws such as the Wilderness Act. Tombstone points only to the Governor's Declaration of Emergency, which does no more than make available $50,000 for repairing damage to Tombstone's water line and says nothing about permitting work on federal lands free of the constraints imposed by federal statutes such as the Wilderness Act.  ER842.  And as *Kleppe* makes clear, 426 U.S. at 543, any State law or declaration purporting to authorize actions on federal land that conflicted with the Wilderness Act or other federal statute would be preempted.

After carefully reviewing the facts of this case, the district court found that "Defendants have engaged in appropriate regulation relating to federal land, and have not commandeered state property or improperly regulated the State."  ER13. In light of that finding, there was no need for the district court to further evaluate Tombstone's clearly meritless claim of irreparable harm to its asserted sovereign interests.

> **B.    Tombstone failed to establish the existence of
> irreparable harm to health or safety.**

Tombstone next attacks (Br. 26) as "clearly erroneous" the district court's findings that "it appears that Plaintiff's water from the Huachuca mountains has been substantially restored, Plaintiff currently has access to sufficient and safe

water between its wells and the Huachuca water, and that Plaintiff's claims of a drastic water emergency related to public consumption and fire needs are overstated and speculative." ER15. Tombstone claims (Br. 27) that the district court overlooked that "[t]he system is now only delivering approximately 100 gallons per minute drawing upon only three of the twenty-five springs Tombstone owns." Tombstone's claim that its water service from the Huachaca Mountains is not "substantially restored" because the repaired water system taps "only 12 percent of its available Huachuca Mountain water sources" (Br. 27) is misleading at best. Tombstone speaks of a "25 spring water system" (*id*.) as if it were a historical reality. In fact, as the district court found, "Plaintiff failed to properly establish where the numerous springs are located and the associated infrastructure that was in place at the time of the Monument fire, has not adequately shown the amount of water it was receiving from the 25 sources prior to the fire, and which of the 25 water sources were or were not producing water at the time of the fire." ER15. Indeed, Tombstone produced no evidence that the springs not mentioned in Tombstone's special use permit were ever used as a part of the City's water system, and testimony showed that Tombstone doesn't even know the location of these additional springs. At the January 26, 2012, preliminary injunction hearing, Tombstone Public Works Project Manager Rudd testified as follows during cross examination:

38

Q.     You said that you attempted to find all 24 springheads and weren't
        able to.  How many did you find?

A.     Altogether about six.

Q.     So you couldn't find 18 of them?

A.     Yes, sir.

ER1447; *see also, e.g.,* ER69, 75-81 (declaration of Forest Service employee
Duane Bennett explaining that many of the springs claimed by Tombstone had not
been used for decades); ER102 (November 7, 2011 Decision Memorandum
approving City's plan for repairs at Miller Spring, noting that two of the City's
other claimed springs and a mile of associated pipeline were damaged by fire and
flooding in 1977 and never repaired).  The fact that various springs beyond the six
subject to Tombstone's special use permit are mentioned in some historical
documents (ER1159) does not establish that Tombstone was utilizing these
springs as part of its water system prior to the Monument fire and subsequent
flood.

        As to the amount of water currently being delivered through the repaired
system, Tombstone claims that a flow of approximately 100 gallons per minute is
not substantial when viewed in light of "historical records [that] show the system
has seasonably delivered up to 400 gallons per minute."  Br. 27.  In fact, the
evidence showed that the amount of water Tombstone has obtained historically
from the springs has been highly variable, and while perhaps reaching a maximum

39

of 400 gallons per minute during wet years, is usually much less, particularly in dry years. *See* ER191-92 (August 1989 letter from the Forest Service to the City noting that the City's Public Works director had stated that "hardly anything had been taken from the canyons this year"); ER 267-68. In some years the system has been shut down entirely for repairs or other reasons. ER1432-33.

The district court found that Tombstone "currently has access to sufficient and safe water between its wells and the Huachuca water * * *." ER15. While Tombstone claims that there was "no factual basis" for this finding, in fact it is supported by the declaration of the City's own water operator, Jack Wright. Wright's declaration indicates that the City's well no. 2 by itself is generally sufficient to supply the City's water needs:

> The City's potable water consumption typically ranges between 100 and 300 gallons per minute depending on the season. The peak potable water consumption season typically begins in mid-May, when consumption can rise regularly to 300 gallons per minute. Between mid-May and beginning of August city potable water consumption can completely use up the available water from Well No. 2.

ER800 (Wright Decl. ¶10). As this indicates, while the supply of potable water from well no. 2 *might* be completely used up during peak consumption season if it alone had to supply Tombstone's potable water needs, it is plainly adequate in combination with the additional water Tombstone is receiving from its repaired Huachaca Mountain pipeline, which Wright estimates at 100 gallons per minute. ER800.

40

Moreover, George Barnes, City Clerk/Manager of Tombstone testified at the January 26, 2012 hearing that Tombstone can also draw water from its well no. 1, which while not directly usable for drinking without being blended with other sources like the Huachuca water or water from will no. 2, at least gives the City additional flexibility in meeting its water needs.  ER1434.[17]

Indeed, it is clear that Tombstone's objection to the finding that the City "currently has access to sufficient and safe water between its wells and the Huachuca water," is based entirely on the possibility that the City's well no. 2 might have to be taken out of service due to arsenic contamination.  But there was no evidence that this was likely to occur during the course of this litigation, so as to warrant the extraordinary relief of a preliminary injunction.  While Wright's declaration states that "[i]t is possible that Well No. 2 could fail due to arsenic contamination equaling or exceeding the levels found in Wells No. 1 or 3" (ER800), he provided no evidence this was anything but a speculative possibility. Indeed, he admitted (ER799, ¶8) that the City only tests this well once a year for arsenic, which is inconsistent with any claim of imminent danger from arsenic contamination.  Moreover, Tombstone produced no evidence indicating that it is

---

[17] Tombstone improperly relies (Br. 28) on a statement in the Forest Service's December 9, 2011 MRDG explaining the need for the work specifically proposed by the City at Gardner Spring in its November 29, 2011, submission.  *See* ER1200, 1215.  This statement does not relate to the additional work Tombstone wishes to engage in pursuant to its preliminary injunction request, but to the specific work at Gardner Spring that the Forest Service approved on December 22, 2012.

taking steps that would logically be expected of a City that faced a true water emergency, such as fixing the leaks in its reservoir (*see* ER1435), remedying the arsenic problem in wells 1 and 3, or imposing water use restrictions.

The district court's finding that Tombstone "currently has access to sufficient and safe water between its wells and the Huachuca water" is at the very least a "permissible view[] of the evidence," and accordingly it "cannot be clearly erroneous." *United States v. Elliott*, 322 F.3d 710, 715 (9th Cir. 2003). Accordingly, Tombstone failed to carry its burden of demonstrating that there would be irreparable harm to health and safety absent the preliminary injunction it here requested.[18/]

---

[18/] As is clear from the above discussion, the district court's findings in its Order were sufficiently comprehensive to support its denial of preliminary injunctive relief, and hence complied with Fed. R. Civ. Proc. 52(a). *See Federal Trade Com'n v. Enforma Natural Products, Inc.,* 362 F.3d 1204, 1212 (9th Cir. 2004) ("We may affirm if the findings are sufficiently comprehensive and pertinent to the issues to provide a basis for decision"). Even where a district court fails to make crucial findings, this Court can affirm the denial of a preliminary injunction where "'[t]he record gives substantial and unequivocal support for the ultimate conclusion'" that injunctive relief is unwarranted. *GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1210-1211 (9th Cir. 2000) (*quoting Unt v. Aerospace Corp.*, 765 F.2d 1440, 1444 (9th Cir.1985)). Tombstone's argument at Br. 22-23 that "[t]he lower court appears to have deliberately disregarded Rule 52(b)" [presumably Tombstone means Rule 52(a)] overlooks the district court's pertinent findings. Moreover, the record in this case clearly supported the district court's denial of injunctive relief, even assuming that the district court's findings were inadequate. Finally, even if the standards of Rule 52(a) were not met and this Court found itself unable to affirm on the basis of the record, the remedy would be to "remand the case for additional and more detailed findings and conclusions," not to issue the requested injunction. *FTC v. Enforma*, 362 F.3d at 1212.

**III. The district court properly found that the balance of equities and the public interest favored denial of injunctive relief.**

A party seeking preliminary injunctive relief "must establish * * * that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Tombstone failed to show that the equities tip in its favor. As the district court found (ER15), granting an injunction permitting the City to use excavators and other construction equipment in order to carry out work at a potentially large number of springs would have a significant adverse effect on an area that Congress has determined should be protected from such degradation. Such damage to a congressionally designated Wilderness has been held by this Court to constitute irreparable harm. *See High Sierra Hikers Ass'n,* 390 F.3d at 642-643.

With respect to the public interest, this Court in *High Sierra Hikers* made clear that:

> Congress has recognized through passage of the Wilderness Act, 16 U.S.C. §§ 1131–1136, that there is a strong public interest in maintaining pristine wild areas unimpaired by man for future use and enjoyment. Because Congress has recognized the public interest in maintaining these wilderness areas largely unimpaired by human activity, the public interest weighs in favor of equitable relief.

*Id.* at 643 (affirming injunction against activities that caused negative impacts in wilderness). Similarly here, the public interest expressed in the Wilderness Act weighs against any relief that would permit Tombstone to run motorized

43

equipment through the Wilderness free from the constraint of protective conditions imposed by the Forest Service pursuant to its approval procedures.

There is also a strong public interest in the protection of species listed pursuant to the Endangered Species Act. The consultation procedures of Section 7(a)(2) of the ESA, 16 U.S.C. § 1536(a)(2), are an integral part of the statute's protective scheme, and this Court has found that injunctive relief is appropriate to bar action which has not been subject to these consultation procedures. *See, e.g.*, *Sierra Club v. Marsh,* 816 F.2d 1376, 1389 (9th Cir. 1987); *Thomas v. Peterson,* 753 F.2d 754, 764 (9th Cir. 1985). In this case, the Forest Service was able to complete emergency consultations with the Fish and Wildlife Service regarding possible impacts on the Mexican spotted owl and other listed species before approving Tombstone's specific proposals for work. ER1240. Tombstone's requested preliminary injunction would have eliminated the consultation process for the additional work the City wishes to do on springs not mentioned in the 1962 SUP. While Tombstone asserts (Br. 38) that "[t]here is no competent record evidence of any significant environmental harm from Tombstones proposed work," the ESA entrusts that judgment to the Forest Service and the expert wildlife agency, not the project applicant. Neither equity nor the public interest favors the relief sought by Tombstone here.

44

## CONCLUSION

The district court's order denying Tombstone's Second Motion for

Preliminary Injunction should be affirmed.[19]

Respectfully submitted,

IGNACIA S. MORENO
*Assistant Attorney General*

DAVID C. SHILTON
s/ MARK R. HAAG
Environment & Natural Resources Division
Department of Justice
P.O. Box 7415
Washington, D.C. 20044
202-514-5580

OF COUNSEL

Cassandra Casaus Currie
United States Department of Agriculture
Office of the General Counsel, Mountain Region
Albuquerque, NM 87103-0586

---

[19] In the Conclusion section of its brief, Tombstone sets out injunctive relief it asks this Court to direct. Even if the district court were found to have abused its discretion in some respect, the appropriate remedy would be to remand for further consideration, not to direct this sweeping injunction, which would preclude the Forest Service from doing anything to control Tombstone's desired use of heavy equipment in the wilderness area to expand its current water system far beyond the confines of its special use permit. Br. 50-51. Injunctions like this that go far beyond simply maintaining the status quo *pendente lite* are "particularly disfavored" and are routinely denied "unless the facts and law clearly favor the moving party," which is not the case here. *Stanley v. University of Southern California,* 13 F.3d 1313, 1320 (9th Cir. 1994) (inner quotation marks and citations omitted).

45

July 2012
90-1-5-13598

## STATEMENT OF RELATED CASES

The Federal Appellees are unaware of any related cases within the meaning of Ninth Circuit Rule 28-2.6 that are pending in this or any other court.

s/Mark R. Haag

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) , I certify that the foregoing Brief is proportionately spaced, has a typeface of 14 points, and contains 11,515 words.

s/Mark R. Haag

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2012, I electronically filed the foregoing Answer Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system.

I further certify that all participants in this case are registered CM/ECF users will be served by the appellate CM/ECF system.

s/Mark R. Haag